## Avey v. Stearman, Admx, et al.

(Decided November 28, 1911.)

Appeal from Carlisle Circuit Court.

Decedents' Estates—Action to Surcharge Settlement of Administratrix.—In an action to require an administratrix to pay back a small sum alleged to have been paid her in excess of commissions to which she was entitled, evidence examined and held that the amount claimed is too small to authorize the reversal of the judgment, and moreover, there is no equity in appellant's claim for the further reason that he withheld from the administratrix the sum of $67.50 to which he was not entitled.

E. T. BULLOCK for appellant.

JOHN E. KANE for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

This was a suit in the circuit court to surcharge a settlement made by M. E. Stearman, administratrix of the estate of her husband, in the Carlisle County Court. T. J. Wilson was made a party to the litigation and was called upon in the suit to refund the sum of $227.20, which, it was alleged, had been erroneously paid to him by the administratrix. In this suit an effort is made to require the administratrix to pay back a small sum alledged to have been paid to her in excess of the commissions which she might lawfully receive; and the further sum of $5, alleged to have been improperly allowed her in her settlement as the cost of procuring a surety on her bond as administratrix. Proof was taken upon the validity of the Wilson debt, and upon consideration of the pleadings, copies of the settlement filed with the papers, and proof offered, the chancellor adjudged that plaintiff was not entitled to the relief sought, and dismissed his petition.

It appears from the evidence that J. F. Stearman had executed to T. J. Wilson two notes, one for $110, on May 7, 1904, and another for $250, on May 22nd, 1906; and to secure each of said notes had executed a chattel mortgage upon certain live stock and articles of personal property. At the time of his death both of these notes were outstanding. His widow qualified as his administratrix, advertised for claims, and proceeded to settle up the estate according to law. E. W. Avey, appellant, filed his claim, and T. J. Wilson proved and presented his claim for the balance due him upon his mortgage debt, evidenced by his two notes. The property was appraised, and such as under section 1403, Kentucky Statutes, was exempt from distribution and sale was by the appraiser valued and set apart to the widow. The balance of the property was appraised for sale. After due notice the property subject to sale was sold at public auction, the administratrix realizing therefrom the sum of $370.50. Her husband had on hand, at the time of his death, $250, making a total of $620.50 that came to her hands as administratrix, or that should have come to her hands in such capacity; for it appears from the evidence that appellant at the sale purchased one horse and two other articles, amounting in the aggregate to $67.50, and did not pay for same, but gave to the administratrix a receipt, stating that he would credit his claim against the estate of her husband with this amount. But in her settlement with the county court she was charged

with the full amount of the sale bill as though it had all been collected. It appears that, included in this sale, were three head of cattle which had been wrongfully appraised. They brought $50, and upon the showing in the county court that they had been wrongfully appraised and sold the administratrix was allowed credit for this sum. No special complaint is made of this. She had six children, the oldest of whom was about seventeen years of age, and there was set apart to her by the appraisers $192 in cash, in lieu of provisions and exempt articles not on hand. This sum was allowed as a credit. J. C. Avey was allowed $22.50, the cost of the casket for deceased; the appraisers were allowed $4.50; the attorney who represented the administratrix $5; she was allowed a credit of $1 for printing the notice of sale, the clerk, for orders appointing her administratrix, etc., was allowed $2.25; the auctioneer who sold the property was allowed $2; the clerk and judge for fees of final settlement were allowed $3; the administratrix was allowed $5, the money paid by her to the bonding company for signing her bond; and $31.02, this being 5 per cent. commission on the amount of money which she received and disbursed, to-wit, $620.50. She paid to Wilson on his mortgage debts the balance shown to be due thereon, $277.20; and thus left in her hands a balance of $25.02, which she tendered to appellant on his indebtedness, but he declined to receive it.

The three items especially objected to as having been improper credits are, first, the item of $277.20 paid to Wilson. This, it is alleged, was $227.20 in excess of the amount really due him. Second, the $5 paid the bonding company, it is insisted, was not a proper charge against the estate. And it is urged, lastly, that the administratrix was not entitled to commission on the money which was set apart to her.

Upon the first proposition proof was taken. Appellant endeavored to show by his witness that Stearman in his lifetime had practically paid off and discharged his indebtedness to Wilson, and at the date of his death only owed him a balance of $50. Wilson denied this and introduced other evidence in effect supporting his claim; and from the evidence we would be unwilling to say that the chancellor was not warranted in holding that there was a balance for $277.20 due Wilson as he claimed.

We are of opinion that the administratrix was not

entitled to the $5 refunded to her on account of the money paid by her to the bonding company for signing her bond. The statute fixes the compensation of personal representatives, and it is incumbent upon them to furnish, at their own expense, the bond, so as to qualify them to accept the trust. The estate should not be burdened with this expense. It pays the personal representative for his services in settling it, and the law casts upon such representative the burden of qualifying, by taking the oath and executing the bond prescribed by law. Any cost incurred in executing this bond must be borne by the personal representative. The statute expressly provides that, if the duties are onerous, the court may, upon a proper showing, allow to the personal representative compensation in addition to or in excess of the percentage fixed by statute. But there is no provision by which the court would be authorized to refund to the representative money paid in order to procure a bond.

The next ground urged for reversal is that the compensation allowed appellee was in excess of that authorized by law to the extent that he allowed her to have a commission on the money which she herself received. The provision of the statute regulating this subject is section 3833, Kentucky Statutes, which reads as follows:

"The allowance to executors, administrators and curators shall not exceed five per cent. on all the amounts received and distributed: Provided, That upon proof heard in open court, upon proper notice to the parties in interest, the court may make an allowance when the executor, administrator or curator has, in the proper discharge of his duties in attending to administering and settling the estate in his hands, been required to perform extraordinary services; but such allowance shall not exceed in amount a fair compensation for the time occupied, and expenses incurred in protecting, attending to, collecting, and settling such estate, and five per cent. on all amounts received and distributed."

In Gar v. Ray, 20 R., 1697, it was held that an executor was not entitled to commission on the amount of estate devised to him. But in that case it appeared that one of the executors owed to decedent a note for $3,800, and this was devised to him. The other executor was, under the decedent's will, made the residuary legatee of the estate, consisting in the main of stocks and bonds. After certain money bequests had been satisfied the resi-

duary legatee took all of the property on hand, to-wit, the stocks and bonds, and they were not converted into cash. Neither was his co-executor required to pay over to them the $3,800, which he owed the estate, but his note was simply surrendered to him. Under this showing the court held that neither was entitled to a commission on these items, for they did not receive and disburse any money whatever, but distributed in kind the estate to which, under the will, they were entitled.

There is no Kentucky authority directly in point. In 18 Cyc., 1141, it is said that at common law the office of personal representative was regarded as honorary and to be performed without remuneration. In the United States and Canada, however, the common law does not obtain, and executors and administrators are allowed a reasonable compensation for their services. And this compensation, as indicated, is in this State fixed by statute. This statute makes no distinction between monies belonging to the decedent which are collected or received and paid out by the personal representatives to themselves in settlement of any claim they may have against the estate and monies paid to others, but says that they are entitled to compensation not exceeding five per cent. "on all monies received and distributed." A fair construction of this language would justify the action of the county court in allowing appellee commission on the total sum received by her as administratrix, for all can not mean part, and he allowed her commission only on what she actually received and paid out. She received and paid out this money in her capacity as administratrix, and the fact that part of it was going to her in satisfaction of a debt due her did not relieve her, as administratrix, of her responsibility to the estate under her bond to properly administer it. If any one other than herself had administered the estate and received and distributed this money, the commission or compensation would have been due, and the cause of complaint such as made by appellant would be removed. But the compensation is allowed for services rendered, and we see no good reason for holding that, where one, although holding a claim against the estate, renders this service, he should not be entitled to the same compensation he would be if he held no claim. We are of opinion that the point is not well taken. The statute is not susceptible of such a construction. We hold that in all cases where the personal representative reduces the estate to

money and disburses it according to law or under order of court, he is entitled to the compensation fixed by the statute without regard to whom the money is paid.

This construction in no wise conflicts with the opinion expressed in Garr v. Roy, supra, or other similar opinions of the court holding that, where devises of property are delivered to and received by the devisee in kind, the personal representative is not entitled to any commission thereon or compensation therefor.

Some complaint is made that appellee, Wilson, was permitted to prove and present his claim to the estate rather than proceed to the enforcement of his mortgage by separate suit. If he had been required to foreclose his mortgage in a suit instituted for that purpose, the court would have directed sold enough of the property covered by the mortgage to satisfy the mortgage debt, and the balance thereof would have been turned over to the personal representative. Such of it as was not exempt from execution and sale would have by her been sold, and the only difference between the settlement of the estate in that way and in the way in which it was settled is that, under the plan suggested, the expense would have been much greater than it was where the administratrix was permitted to sell the property and out of the proceeds of the whole pay off and satisfy the preferred claim, including the mortgage debt and the money set apart to her in lieu of property and provision not on hand.

It was a small estate; the total compensation allowed appellee for her services in settling it was but $31.02. It is altogether probable that the county judge allowed her credit for the $5 which she paid to the bonding company by way of additional compensation for the trouble to which she was put in the management and settlement of her husband's estate. But be that as it may, the sum is so small that we would not reverse the case on this account. And there is no equity in appellant's claim for the further reason that he withheld from the administratrix $67.50 to which he was not entitled.

Judgment affirmed.